<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 03-2280, 03-2503, 03-2380
_____

UNITED STATES OF AMERICA

v.

DARYL LONARD PARKER a/k/a
Daryl Lenard Parker a/ka Junior Parker a/k/a
JR Parker a/k/a JR

    Appellant at No. 03-2280
_____

UNITED STATES OF AMERICA

v.

TRAVIS THURSTON PARKER,

    Appellant at No. 03-2503
_____

UNITED STATES OF AMERICA

v.

MICHAEL ANTHONY PARKER,

    Appellant at No. 03-2380
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 01-cr-00248)
District Judge: The Honorable William W. Caldwell

_____

ARGUED JUNE 23, 2004

BEFORE: NYGAARD, McKEE, and CHERTOFF,[*] Circuit Judges.

(Filed March 31, 2005)

William A. Fetterhoff, Esq. (Argued)
Fetterhoff & Zilli
200 North Third Street, Suite 800
Harrisburg, PA 17101
   Counsel for Appellant, No. 03-2280

Royce L. Morris, Esq.
Goldberg Katzman & Shipman
320 East Market Street
P. O. Box 1268, Strawberry Square
Harrisburg, PA 17108
   Counsel for Appellant, No. 03-2503

James J. West, Esq.
West Long
105 North Front Street, Suite 205
Harrisburg, PA 17101
   Counsel for Appellant, No. 03-2380

Theodore B. Smith, III, Esq. (Argued)
Christy H. Fawcett, Esq.
Office of United States Attorney

---

[*]This case was submitted to the panel of Judges Nygaard, McKee, and Chertoff. Judge Chertoff resigned after submission, but before the filing of the opinion. The decision is filed by a quorum of the panel. 28 U.S.C. § 46(d).

Federal Building
228 Walnut Street, P.O. Box 11754
Harrisburg, PA 17108
<u>Counsel for Appellee</u>

_____

OPINION OF THE COURT
_____

NYGAARD, <u>Circuit</u> <u>Judge</u>.

Appellants Daryl Parker and Travis Parker appeal from the final judgment of conviction. Michael Parker appeals his sentence.[1] We will affirm each defendants' convictions. We will vacate and remand the sentences, however, to the District Court for resentencing in light of *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005).

I.

Because we write solely for the benefit of the parties, we recount the facts and the procedural background only as they are relevant to our decision. New York City police detective Earl Williams noticed a luxury Lincoln Navigator parked in an area of the city notorious for its illicit drug trade. Williams saw two men, later identified as Daryl Parker and Tye Dickerson,[2] who appeared to be waiting inside the vehicle.

---

[1]Throughout this opinion we will refer to the appellants by either their full name or simply by their first names.

[2]Tye Dickerson was later identified as a driver for an illegal cab service; he apparently had no other connection to the alleged conspiracy. (App. at 85).

Williams then observed another man, later identified as Travis, fidgeting with his waist-band near the Navigator. Williams' experience led him to believe that Travis may have been hiding a pistol in his waistband. Williams watched Travis climb into the Navigator and then relayed this information to his field cover team, including Detective Jay Santana.

Based upon Williams' observations, Santana and the field cover team stopped the Navigator and asked Travis to get out of the vehicle. Santana patted down Travis and felt a large, lumpy bulge around his waistband. Santana knew the bulge was not a firearm, but recognized the bulge by feel as rocks of crack cocaine. Santana removed a tube sock filled with 48 grams of powder cocaine and 247 grams of crack cocaine from Travis' waistband. He then arrested Travis and conducted a search of the Navigator.

Santana subsequently arrested Daryl and Dickerson, and confiscated the Navigator. While driving the Navigator, Santana heard two cell-phones in the car ring numerous times. He answered one of the calls and later testified that the caller asked 1) for "J.R.;" 2) whether he had received the package; and 3) how long it would be.

A federal grand jury indicted Daryl, Travis, Michael and Thaddeus Westry with various drug trafficking offenses, including conspiracy to distribute cocaine. The defendants asked the District Court to suppress evidence obtained through Santana's search of Travis and the intercepted cell-phone call. The District Court denied both motions. Michael and Westry then pleaded guilty to lesser offenses. Daryl and Travis

proceeded to trial and were convicted of conspiracy to distribute cocaine and underlying substantive offenses. Daryl and Travis now appeal their convictions, while Michael appeals only his sentence.

## II.

First, we address Daryl and Travis' appeals. They appeal from their convictions of the District Court based upon three primary contentions: 1) Santana's search of Travis violated the Fourth Amendment prohibition against unreasonable searches and seizures; 2) the cell-phone caller's questions were inadmissible under the hearsay rule;[3] and 3) there was insufficient evidence to support conviction on the drug conspiracy charge.

### A.

We review a District Court's determination of reasonable suspicion *de novo*. *See United States v. Valentine*, 232 F.3d 350 (3d. Cir. 2000)*; Ornelas v. United States*, 517 U.S. 690 (1996). We review the District Court's factual findings for clear error, while giving deference to the inferences drawn from those facts by the District Court and by the police officers involved. *See United States v. Robertson*, 305 F.3d 164, 168 (3d Cir. 2002).

The Fourth Amendment permits a police officer to conduct a brief, investigatory stop if the officer has a "reasonable, articulable suspicion" that the person he or she is stopping is committing, or is about to commit, a crime. *Valentine*, 232 F.3d at 353. To

---

[3] Only Daryl Parker raised this argument in his brief before this Court. However, given our resolution of this issue, we need not address Travis' failure to raise it.

determine whether Williams' suspicions were reasonable, we must consider the "totality of the circumstances." *Robertson*, 305 F.3d at 166. In doing so, we defer to the "officer's knowledge of the nature and nuances of the type of criminal activity" the officer has observed. *Id.* at 166.

According to Williams,[4] the following particular facts, combined with his experience, led him to believe criminal activity was taking place: 1) the neighborhood in which this activity took place was plagued by drug activity; 2) the manner in which Travis adjusted his waistband was consistent with the possession of a firearm; and 3) a nearby "delivery service" rented luxury vehicles like the Navigator to transport drug dealers. Given Williams' experience, the facts here "plainly gave rise to a reasonable suspicion sufficient for an investigative stop." *United States v. McGlory*, 968 F.2d 309, 343 (3d Cir. 1992).

Travis argues that, even if reasonable suspicion justified a *Terry* stop, Santana violated the Fourth Amendment by immediately searching Travis' waistband and seizing the cocaine-laden sock. Supreme Court precedent indicates Travis is incorrect:

> [i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of privacy beyond that already authorized by the officer's search

---

[4] Daryl argues that Williams' observations could not provide a basis upon which Santana could rely in making a *Terry* stop. On the contrary, "[i]t is well settled that reasonable suspicion can be based upon information gathered from another person." *Robertson*, 305 F.3d at 168 (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)); *see also Valentine,* 232 F.3d at 354.

>for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations inherent in the plain-view context.

*Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993). Thereafter, Santana's pat-down of Travis made the cocaine's identity "immediately apparent." *See Dickerson*, 508 U.S. at 375. Santana could then seize the contents of Travis' sock without offending the latter's Fourth Amendment rights. *Id*. We conclude that the District Court properly admitted the cocaine found on Travis' person into evidence.

B.

We next address the argument that the cell phone callers questions to Santana were inadmissible hearsay. Whether evidence is hearsay is a question of law subject to plenary review. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). A "statement" is defined as "1) an oral or written assertion or 2) nonverbal conduct of a person, if it is intended by the person as an assertion." FED. R. EVID. 801(a). The Advisory Committee Notes to Rule 801 explain that, "[t]he key to this definition is that nothing is an assertion unless intended to be one." FED. R. EVID. 801(a) advisory committee's note.

Daryl argues that because the Government intended to use the intercepted call to prove Daryl's connection to the "package," the caller's questions constitute "assertions." The Advisory Committee Notes indicate the real issue is whether the *caller* intended her

7

questions as assertions. FED. R. EVID. 801 advisory committee's note. Despite appellants' attempts to obfuscate the issue, it is difficult to imagine that the caller intended to assert that Daryl received a "package" by asking whether he received it. Indeed, the caller's questions sought, rather than asserted, information, and therefore contained little factual content. As a result, the potential dangers in admitting the call are minimal, and "do not justify the loss of the evidence on hearsay grounds." FED. R. EVID. 801(a) advisory committee's note. We agree with the District Court that the intercepted call was admissible.

## C.

Finally, Daryl and Travis argue that their convictions under the drug conspiracy charges were not supported by sufficient evidence. "In reviewing a jury verdict for sufficiency of the evidence, we must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Haywood*, 363 F.3d 200, 204 (3d Cir. 2004). Here, the defendant bears a heavy burden, since, "[a]ppellate reversal on the grounds of insufficient evidence should be confined to those cases where the failure of the prosecutor is clear." *Haywood*, 363 F.3d at 204.

While there is no direct evidence of an agreement between Daryl and Travis, ample circumstantial evidence supports the jury's verdict. Juan Estrella, the principal source of the cocaine, testified that Daryl agreed to introduce him to large-quantity

8

cocaine buyers in exchange for "commissions." Daryl introduced Estrella to his cousin Michael, who in turn brought his brother Travis into the fold. Over several years, Estrella sold thousands of grams of cocaine to Michael, Travis and others for distribution in York, Pennsylvania. Meanwhile, Estrella continued to provide cash assistance to Daryl, even while the latter spent time in prison. In addition, Michael testified that Daryl trained Michael and Travis to cook cocaine into crack. Finally, Daryl was caught traveling with Travis while the latter carried 48 grams of powder cocaine and 247 grams of crack. We conclude that, based on this evidence, a rational trier of fact could find Daryl and Travis guilty beyond a reasonable doubt of the drug conspiracy charge.

III.

Michael pleaded guilty to a felony information charging conspiracy to distribute an unspecified quantity of crack cocaine in violation of 21 U.S.C. § 846. In exchange for Michael's assistance, the Government recommended a 50 percent downward departure from the guideline range of 262 to 327 months.

At his sentencing hearing, the PSR recommended a 2-point upward adjustment for the possession of a dangerous weapon, to which Michael objected. According to the record, the District Court found insufficient evidence to support the upward adjustment and sustained Michael's objection. The court then sentenced Michael to 125 months in prison, a fine of $1000, a special assessment of $100 and three years supervised release.

On appeal, Michael requests that we order the District Court to: 1) hold an evidentiary hearing to determine if his appointed counsel was ineffective; and 2) amend the official written judgment to reflect that the District Court sustained Michael's objection to the 2-point enhancement for possession of a dangerous weapon. We will address these arguments in turn.

We have consistently deferred ineffective assistance of counsel claims to collateral proceedings under 28 U.S.C. § 2255.[5] We do likewise here and deny Michael's ineffective assistance of counsel claim without prejudice.

Finally, Michael requests that this Court remand his case because the sentencing judge's Statement of Reasons indicates Michael was subject to a 2-point enhancement for possession of a dangerous weapon. Michael correctly points out that the District Court sustained his objection to the PSR's recommendation. (App. at 54a). The Government acknowledges that a correction of the District Court's Statement of Reasons would be appropriate.

IV.

---

[5] We have adopted this policy primarily because, "[w]hen an ineffective assistance of counsel claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record that is not developed precisely for, and is therefore often incomplete or inadequate for, litigating or preserving the claim." *United States v. Thornton,* 327 F.3d 268, 272 (3d Cir. 2003) (citing *Massaro v. United States*, 538 U.S. 500, 501 (2003)). In contrast, in a collateral proceeding, the District Court can hear testimony from the defendant, prosecutor and the allegedly ineffective counsel. *Massaro*, 538 U.S. at 506.

Appellants challenge their sentences under *United States v. Booker*, 543 U.S. __, 125 S. Ct. 738 (2005). Having determined that the sentencing issues appellants raise are best determined by the District Court in the first instance, we vacate the sentence and remand for resentencing in accordance with *Booker*.

V.

For the reasons set forth above, we affirm in part and vacate and remand in part. We affirm the District Court's convictions as to Daryl Parker, Travis Parker and Michael Parker. We vacate and remand, with respect to all three appellants, to the District Court for resentencing.