```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:CR-01-248 |
| | : | |
| V. | : | (Judge Caldwell) |
| | : | |
| DARYL LONARD PARKER | : | (Electronically Filed) |

## BRIEF OPPOSING SECTION 2255 MOTION

### I. Procedural History

On August 1, 2001, the grand jury returned an indictment charging Defendant Daryl Lonard Parker ("Defendant"), Travis Thurston Parker ("Travis Parker"), Michael Anthony Parker ("Michael Parker") and Thaddeus Nathanial Westry with various drug trafficking offenses. (Dkt. Entry No. 1.) The defendant, Travis Parker and Thaddeus Westry pleaded not guilty. (Dkt. Entries 14, 29, and 40.)

On October 5, 2001, the defendant filed a motion to suppress evidence, in which motion Travis Parker joined. (Dkt. Entries 24, 25, 44.) On December 5, 2001, the Court held a hearing on the suppression motion. (Dkt. Entry 60.) By memorandum opinion and order dated December 21, 2001, the Court denied the motion to suppress evidence. (Dkt. Entry 74.)

On December 19, 2001, a superseding indictment substantially similar to the original indictment was returned against all four defendants. (Dkt. Entry 73.) Count I charged the defendant, Travis Parker, Michael Parker, and Thaddeus Westry with conspiracy to manufacture and distribute and to possess with intent to

distribute 50 grams or more of crack cocaine and five kilograms or more of powder cocaine.  Each of the four remaining counts charged one of the four co-conspirators with a substantive count of manufacturing and distributing and possessing with intent to distribute 50 grams or more of crack cocaine. The substantive distribution counts against Travis and Michael Parker charged them with distributing and possessing with intent to distribute five kilograms or more of powder cocaine while the substantive distribution count against the defendant charged him with distributing and possessing with intent to distribute between 500 grams and five kilograms of powder cocaine.

   Michael Parker and Thaddeus Westry both ultimately entered guilty pleas to superseding informations charging lesser drug offenses pursuant to negotiated plea agreements. (Dkt. Entries 87-88, 109 and 134.)  On August 19, 2002, the defendant and Travis Parker proceeded to trial before the Court and a jury.  On August 22, 2002, the jury returned guilty verdicts against the defendant and Travis Parker as to both the conspiracy and the substantive distribution counts.  (Dkt. Entries 172, 173.)  As against each defendant, the jury found the conspiracy count to involve 50 grams or more of crack cocaine and five kilograms or more of powder cocaine, as charged. The jury found the defendant's substantive distribution charge to involve 50 grams or more of crack cocaine, and between 500 grams and five kilograms of powder cocaine.  The

jury found Travis Parker's substantive distribution charge to involve 50 grams or more of crack cocaine and five kilograms or more of powder cocaine. (Dkt. Entries 171, 173.)

On April 28, 2003, the Court sentenced the defendant to concurrent 349-month sentences of imprisonment on the conspiracy count and the substantive distribution count, a five-year term of supervised release, a $4,000 fine, and a $200 special assessment. The sentence, which was at the bottom of the applicable guidelines range, reflected an 11-month adjustment for time served on a related York County case. (Dkt. Entry 200.) On May 8, 2003, Travis Parker was sentenced to concurrent 324-month sentences of imprisonment on the conspiracy count and the substantive distribution count, a five-year term of supervised release, a $4,000 fine, and a $200 special assessment. On April 30, 2003, the defendant filed his notice of appeal. (Dkt. Entry 289.) Travis Parker and Michael Parker also filed notices of appeal.

On March 31, 2005, the Third Circuit filed an opinion affirming the convictions of the defendant, Travis Parker, and Michael Parker. However, the Court vacated each defendant's sentence and remanded them to the district court for resentencing in light of *United States v. Booker,* 543 U.S. 220 (2005). *See* Docket Nos. 03-2280, 03-2503, and 03-2380. A Petition for Writ of Certiorari was filed with the United States Supreme Court on April 12, 2005 and denied by that court on May 16, 2005. (Dkt. Entry

275.)

On May 24, 2005, the Court resentenced Travis Parker to an aggregate term of imprisonment of 180 months. The next day, May 25, 2005, the Court, in Michael Parker's case, granted the government's motion filed pursuant to Federal Rule of Criminal Procedure 35 (b) and reduced Michael Parker's sentence from 96 months' imprisonment to 86 months' imprisonment. (Dkt. Entry 281.)

On July 6, 2005, the Court resentenced the defendant. The sentence imposed was identical to the original sentence: concurrent sentences of 349 months' imprisonment on the conspiracy count and the distribution count, a five-year term of supervised release, a $4,000 fine, and a $200 special assessment. (Dkt. Entry 288.)

On July 14, 2005, the defendant filed a Notice of Appeal with the Third Circuit, which court affirmed the defendant's conviction. On November 28, 2006, the United States Supreme Court denied the defendant's petition for writ of certiorari. (Dkt. Entries 292, 310.)

On October 15, 2007, the defendant filed a form document entitled "Petition Under 28 USC § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal custody." (Dkt. Entry 315.) On that same date, the defendant filed a motion seeking additional time to supplement his motion. (Dkt. Entry 316.)  The Court denied the motion, noting that the defendant had until November 28, 2007-- more than 30 days--to file such a supplement prior to the

expiration of time for filing his Section 2255 motion. Dkt. Entry 317.)

On November 27, 2007, the defendant filed a Motion to Amend his Section 2255 Motion. (Dkt. Entry 318.)

The defendant was represented at all stages of the proceedings, through the denial of his petition for writ of certiorari with the United States Supreme Court, by William Fetterhoff, Esquire ("trial counsel"). Travis Parker was represented at all stages of the proceedings by Royce Morris, Esquire.

The sum and substance of the defendant's filings are that he alleges that trial counsel was ineffective for failure to interview and call as a trial witness co-defendant Travis Parker. He asserts that Travis Parker would have testified that: 1) The defendant did not introduce Michael Parker to Juan Estrella, a New York source of supply for the drug conspiracy; 2) The defendant did not share drug trafficking proceeds with government witnesses Michael Parker and Juan Estrella, nor did he pool funds with these individuals to purchase cocaine or crack cocaine; 3) Contrary to the testimony of Michael Parker, Travis Parker did not accompany Jabar Sease, Darrell Jennings, and Michael Parker to purchase cocaine or crack cocaine from the defendant on February 12, 2001; 4) Travis Parker never saw the defendant cook crack cocaine nor did the defendant teach Travis Parker to cook cocaine into crack; and 5) at no point

5

either during or after trial did defense counsel attempt to contact him concerning testimony he could provide.

**II. Facts**

In approximately 1997, Juan Estrella became involved in dealing cocaine with a cocaine trafficker known by the street name "Nando." Shortly thereafter, Nando introduced Estrella to Daryl Parker who went by the street name "JR." Estrella's first meeting with JR took place near 138th Street and Broadway in New York City. Nando had told Estrella that Nando and JR had an ongoing cocaine trafficking relationship, although Daryl Parker had undergone a lengthy period of incarceration which ended in October, 1997. (TT 76-77.)

Nando introduced Estrella to JR so that when Nando was not around, Estrella could sell cocaine to JR. During their first meeting, Estrella sold JR either 10 or 14 grams of powder cocaine. Estrella proposed to JR that he introduce Estrella to other large-quantity cocaine buyers in return for which JR would be paid a commission in the form of cocaine. (TT 49-51.)

Thereafter, JR brought customers to Nando or Estrella on 10-15 occasions and often received a commission in return. Typically, the commission would be 28 grams of powder cocaine. (TT 53-54.)

JR introduced several individuals from York, Pennsylvania, to Nando and Estrella, each of whom began purchasing cocaine from them. Among these individuals were Nathan Banks, Derrick Greer, "C

Murder," and Michael Parker. (TT 54-56, 82-83.) Michael Parker was JR's cousin. (TT 155.) JR drove Michael Parker to New York City for this first meeting and Michael purchased cocaine, using his own money and money furnished by JR. Later, JR asked for and received from Michael most of the drugs they had purchased together. Michael sold the remaining drugs. (TT 156-160.)

Michael traveled to New York City between three and 10 times thereafter to purchase drugs from Estrella. Michael eventually introduced his younger brother, co-defendant Travis Parker, to Estrella. Travis Parker, too, began purchasing large quantities of powder cocaine from Estrella in New York City. (TT 57-60, 162.) Later, Estrella began traveling to York to sell cocaine to Travis and his compatriots. (TT 60-65.) Daryl Parker was not present for these meetings because he was incarcerated during this time frame. (TT 65-66.)

On one occasion while Daryl Parker was incarcerated, Estrella received a call from a woman calling from the 718 area code in New York City who stated that Daryl needed money. Estrella met the woman at 151st Street and Broadway and delivered $400 to $500 to her to give to Daryl. (TT 71-72.)

On January 31, 2001, Daryl Parker was released from prison. Twelve days later, on February 12, 2001, Michael Parker was arrested while in joint possession with Jabar Sease of 144 grams of crack cocaine that Daryl Parker had just delivered to Sease. (TT

7

174-76.)

During the early summer of 2001, Daryl Parker's source of cocaine in New York City was Andre Holder, who went by the street name of "Dre." Holder, another of Daryl's cousins, was a "prominent player" in the New York City drug trafficking world. One of the individuals to whom Daryl Parker sold cocaine in York was "Varor," another "major player." (TT 167-170, 182.)

Michael Parker witnessed Daryl Parker and "Dre" cooking powder cocaine into crack in the York kitchen of one of Daryl's girlfriends. Michael was present because Daryl wanted him to learn how to cook crack. Daryl also taught Travis, age 20 at the time, to cook crack cocaine. (TT 170-72.)

From Michael Parker's perspective, one of Daryl's roles in the so-called "212 Gang" of drug dealers in York was as "the muscle," meaning, "If I got any problems, I can go to him, and he will help me out, assist me." (TT 212-213.) Daryl frequently carried a .357 magnum. (TT 212-213.)

On July 4, 2001, Daryl and Travis Parker were arrested following a car stop in New York City that yielded 48 grams of powder cocaine and 247 grams of crack cocaine. The night before that New York City car stop, Michael saw Daryl and Travis Parker and Andre Holder at Daryl's girlfriend's house, where they were cooking cocaine into crack. The cocaine was not cooking properly so either Daryl Parker or Andre Holder said they would have to go

8

to New York City to obtain more cocaine. (TT 178-79.) On the morning of July 3, Michael saw Daryl and Travis Parker together in Daryl's mother's car, with Daryl driving. Michael knew that Daryl previously used an unofficial taxi service in New York City which hauled drug dealers to different parts of the city in return for a substantial fee. (TT 180-81.)

The car that was stopped in an area of New York City known for a high volume of drug trafficking was the type that were dispatched by a specific taxi service to transport drug dealers to locations where they could purchase drugs. (TT 9-10.) Daryl Parker and Travis Parker and the driver of the vehicle were removed and a search of Travis Parker's person yielded 247 grams of crack cocaine. (TT 20-22, 27.) The driver was questioned, and he confirmed his role as an unofficial "cabbie" who would pick up individuals from out-of-state and drive them to known drug areas. (TT 28-29.)

The New York City detective who drove the vehicle from the location where it was stopped noticed several cell phones located on the console area next to where Daryl Parker was seated. The detective answered a ringing cell phone and the caller asked, "JR . . . You got the package?" (TT 22-25.)

Neither the defendant nor Travis Parker testified at trial. However, trial counsel called three witnesses who testified on behalf of the defendant. Tonya Bethune, Chandra Spears, and

9

Franklin Ramsey all presented testimony that tended to impeach the testimony of government witness Michael Parker concerning the defendant's involvement in drug trafficking.

**III. Issue**

    **A. WAS TRIAL COUNSEL INEFFECTIVE FOR FAILURE TO INTERVIEW AND CALL AS A WITNESS TRAVIS PARKER, THE CO-DEFENDANT IN THIS CASE?**

**IV. Argument**

    **A. TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILURE TO INTERVIEW AND CALL TRAVIS PARKER AS A WITNESS WHEN HE WAS NEVER TOLD THAT TRAVIS PARKER WOULD PROVIDE FAVORABLE TESTIMONY.**

The defendant alleges that trial counsel was ineffective for failure to interview the co-defendant, Travis Parker, and for failure to call Travis Parker as a witness at trial. He claims that Travis Parker would have testified that: 1) The defendant did not introduce Michael Parker to Juan Estrella, a New York source of supply for the drug conspiracy; 2) The defendant did not share drug trafficking proceeds with government witnesses Michael Parker and Juan Estrella, nor did he pool funds with these individuals to purchase cocaine or crack cocaine; 3) Contrary to the testimony of Michael Parker, Travis Parker did not accompany Jabar Sease, Darrell Jennings, and Michael Parker to purchase cocaine or crack cocaine from the defendant on February 12, 2001; 4) Travis Parker never saw the defendant cook crack cocaine nor did the defendant teach Travis Parker to cook cocaine into crack; and 5) at no point

10

either during or after trial did defense counsel attempt to contact him concerning testimony he could provide.

The defendant claims that such testimony "would have provided the jury a reason to acquit [the defendant] of the conspiracy offense." (Motion to Amend, 9.)

The defendant's claims of ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland*, a defendant who brings an ineffectiveness claim must establish (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that such deficient performance prejudiced the defense. In analyzing whether counsel's performance fell below an objective standard of reasonableness, the reviewing court must determine "whether the identified acts or omissions were outside of the "wide range of professional competent assistance." *Id.* at 690. This analysis requires that 'every effort be made to eliminate the distorting effects of hindsight . .and to evaluate the conduct from the counsel's perspective at the time." *Id.* at 689. Prejudice is established if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.

With respect to the defendant's claim that defense counsel failed to interview and call a specific witness, the District Court for the Eastern District of Pennsylvania has noted that "[t]here

11

has not been a[n]. . . elucidation of *Strickland's* standards in the federal courts" as these standards apply to a claim of ineffectiveness for failure to call a witness. *United States v. Satterfield,* 322 F.Supp. 613, 622 (E.D. Pa. 2004).

In *Satterfield,* the district court adopted the Pennsylvania Supreme Court's five-part test for analyzing ineffectiveness claims based on failure to call a witness:

> Petitioner must show that: (1) the witness existed; (2) the witness was available to testify; (3) counsel knew or would have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness was so prejudicial as to have denied petitioner a fair trial.

*United States v. Satterfield,* 322 F.Supp. 2d at 622.

The district court concluded that the first four prongs of the above test relate to the first prong of *Strickland* while the last prong relates to the *Strickland* requirement that the petitioner must have been prejudiced by counsel's deficient performance.

On March 24, 2008, undersigned counsel spoke to Attorney Fetterhoff, the defendant's trial counsel. Attorney Fetterhoff stated that, as alleged by the defendant, he did not interview Travis Parker. However, he further explained that at no time was there any suggestion either from his client, from Travis Parker, from Royce Morris, Esquire, counsel for Travis Parker, or from anyone else that Travis Parker had information that was helpful to the defendant. Nor was there any suggestion that Travis Parker

would be willing to testify on behalf of the defendant.

Attorney Fetterhoff further explained that his client wanted to testify in his own behalf but he (Attorney Fetterhoff) advised against it. To insure that his client was fully advised of the ramifications of this decision, Attorney Fetterhoff requested the Court to colloquy the defendant out of the presence of the jury. This colloquy occurred, *see* TT 311-313, and the defendant elected not to testify. According to Attorney Fetterhoff, even if Travis Parker had indicated a willingness to testify on behalf of the defendant, Attorney Fetterhoff would have advised against it because of the numerous grounds on which Travis Parker's testimony could have been impeached.

Also on March 24, 2008, undersigned counsel spoke to Attorney Morris. Attorney Morris stated that at no time did Travis Parker either state or suggest that he had information that would be helpful to the defendant or indicate that he would testify on behalf of the defendant. Attorney Morris further stated that had Travis Parker indicated he had information helpful to the defendant, Attorney Morris would have provided this information to Attorney Fetterhoff and permitted Attorney Fetterhoff to interview his client. Attorney Morris also explained that he would have advised his client not to testify on behalf of the defendant but could not, and would not, prevent his client from doing so if he made a fully informed decision to do so.

Thus, the defendant can potentially establish the first, second, and fourth prongs of the analysis adopted by the *Satterfield* court. However, because his assertion that he told trial counsel about the availability of Travis Parker's favorable testimony is flatly contradicted by the statements of both trial counsel and counsel for Travis Parker, he cannot establish the third prong.

Notably, the defendant's ineffectiveness claim only relates to his conviction for criminal conspiracy. He does not assert that Travis Parker's testimony would have affected the jury's verdict convicting him of the substantive offense of distribution and possession with intent to distribute 50 grams and more of crack cocaine and 500 grams and more of powder cocaine. Nor does he raise any claims related to the 247.6 grams of crack cocaine that was seized from Travis Parker while in the company of the defendant, an incident that is arguably the government's strongest evidence of a drug conspiracy between the two. However, the drug weights established by the testimony that the defendant claims would have been undercut by Travis Parker's testimony apply to both the conspiracy charge and the substantive offense.[1] If this

---

[1] It should be noted that the first two points on which the defendant claims Travis Parker could provide testimony involve Travis Parker's knowledge of the absence of certain actions by Michael Parker and Juan Estrella. Unless Travis Parker spent every moment of his life cleaved to Michael Parker or Juan Estrella, his testimony could not prove this negative. However, it is within the realm of possibility that Travis Parker could have had knowledge of the last three points described by the defendant.

testimony were credited by the jury, the defendant's drug weights, and thus his guideline imprisonment range, could conceivably have been lower.

**V. Conclusion**

For all these reasons, the Court should schedule a hearing in this matter for the purpose of permitting the parties to present evidence on the defendant's claim concerning the purported testimony of Travis Parker.

    Respectfully submitted,

    MARTIN C. CARLSON
    Acting United States Attorney

    s/Christy H. Fawcett
    CHRISTY H. FAWCETT
    Assistant U.S. Attorney
    PA35067
    Christy.Fawcett@usdoj.gov

    228 Walnut Street, Suite 220
    P.O. Box 11754
    Harrisburg, PA 17108
    Phone: (717) 221-4482
    Fax: (717) 221-4493

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 1:CR-01-248 |
| | : | |
| V. | : | (Judge Caldwell) |
| | : | |
| **DARYL LONARD PARKER** | : | (Electronically Filed) |

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

   That this 26th day of March 2008, she served a copy of the attached

**BRIEF OPPOSING SECTION 2255 MOTION**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

**Pro Se**

**Daryl Lonard Parker**
FCI-Schuylkill - # 10866-067
P.O. Box 759
Minersville, PA 17954


                                        s/Christina L. Garber
                                        Christina L. Garber
                                        Legal Assistant

16